## WEBB *v.* STONE.

It is not necessary that all the particulars of the note secured should be set forth in the condition of the mortgage. It is enough if it appears with reasonable certainty to be the note intended.

The party who would rescind a contract because the other party does not perform his part, must do so distinctly and in reasonable time.

The party who claims to rescind a contract must show that he has done all that he is required to do, in order to entitle himself to a performance of it by the other party.

TROVER, for a horse. Plea, the general issue. The plaintiff claimed title to the property by virtue of a mortgage from the defendant to himself, dated October 17th, 1846. The mortgage was duly signed, sworn to and recorded, and included the property in question. The condition of the mortgage was to pay two promissory notes due from the defendant to the plaintiff, as follows: " One, dated Guildhall, June 15th, 1844. For value received I promise to pay Greenlief Webb, or his order, the sum of thirty-six dollars and fifty cents, payable in saleable neat stock, at cash price, by the first day of September, A. D. 1845, and interest. The other, dated Guildhall, June 15th, 1844. For value received I promise to pay Greenlief Webb, or his order, the sum of thirty-six dollars and fifty cents, payable in saleable neat stock, at cash price, by the first day of September, A. D. 1846, and interest by the first day of January, A. D. 1847." The notes presented to sustain the mortgage agreed in all respects with those set forth in the mortgage, with this exception: That by the notes, interest was payable " *annually*," and the condition of the mortgage described notes on interest merely. The defendant took exception that the notes produced did not correspond with those described in the mortgage, and did not sustain it, and hence, that the title to the property failed. It appeared that the defendant sold the horse after it was mortgaged, without the consent of the plaintiff.

The defendant also contended that the notes set forth in the mortgage, and produced upon the trial, were without consideration and void, or, at least, that the consideration had failed.

To prove this he produced an agreement of the plaintiff to convey to him certain land, bearing even date with these notes, as follows: "I have this day agreed to deed one half of the hundred acre lot of land in Northumberland, N. H., deeded to me by Mills Olcutt, for one hundred dollars, to F. A. Stone. Said Stone is to have the east half of said lot, or half next to John W. Bennett's, and on the line betwixt the above mentioned lot and the one owned by D. H. Sumner. I have received two notes of said Stone against Abram Amey; both of said notes amount to twenty-seven dollars. I received of said Stone two notes for seventy-three dollars, which, when paid, will be in full for said land. We are to get together, as soon as convenient, and make out the writings; that is to say: I am to give a bond for a deed, or give a deed and take a bond back. I also reserve all the spruce, hemlock, tamarack and pine lumber on said lot. The notes that I received against said Amey, said Stone agrees that the security he holds, he will put me in the possession of at the time we make our writings.

"June 15th, 1844.                    Greenlief Webb."

The defendant then proved that in the fall of 1847 he told Webb that the money was ready for him; he had it, and kept it till the commencement of this suit, although he never exhibited it to Webb, or made any tender of it. The defendant, at other times, told Webb that the money was ready for him if he would make out the writings, and he refused. In 1848, in the spring, a witness to whom Stone had bargained the land, which was known to Webb, applied to Webb for a deed, and offered to pay him what was due him from Stone. Webb refused to do it, saying that he had received from Stone two notes, besides Stone's own notes, in part payment for the land, and that one of the notes was good for nothing; that he would not deed to the witness, or any person, until the notes were made good to him.

After the agreement signed by Webb was made, it appeared that the defendant occupied about two acres of the land for a year or two.

A verdict was taken for the plaintiff, by consent, on which judgment is to be entered, or the verdict set aside and judgment entered for the defendant, as the opinion of the court shall be upon the whole case.

*J. W. & G. C. Williams*, for the defendant. The first question arises from the variance between the notes produced on trial and those described in the mortgage. This would be a fatal variance if it occurred in a *declaration*. Whether the court will apply the same rules in case of what is in fact a declaration upon a mortgage, is to be determined. This is not a case where the mortgage attempts to set out the notes *substantially*, but where the notes are attempted to be copied *precisely and verbatim*, even to the formal parts, such as, For value received I promise to pay, &c. Also, that this variance occurs *not once*, but twice in the mortgage, as *each* note is described *separately* and *literally*.

It would seem, therefore, evident that the word *annually* has since the execution of the notes been inserted in *both notes*, or the notes are not those described in the mortgage. It cannot well be imagined that the person drawing the mortgage, copying each note *at length, and verbatim*, should in both instances omit the same *material* word.

If the court hold that the identity of these notes with those in the mortgage may be shown by *parol* evidence, there is none in this case, except what the notes and the mortgage themselves afford.

The second question is as to the failure of the consideration of the notes secured by said mortgage.

The general principle seems well settled in this State, that where "a promise of the payee is the consideration of a note, and that promise fails altogether, so that the maker of the note loses all the advantages he might have expected to derive from it, and nothing is left to him but a mere right of action for the breach of that promise, he may waive that right of action, and treat the whole agreement as a nullity, if he so chooses, and avoid the note." *Tillotson* v. *Grapes*, 4 N. H. Rep. 446. This

case seems very closely to resemble the present, (the consideration there being an agreement to deed land,) and the reasoning there equally applicable here. This application is sustained by other cases in this State and in other States, even where the land was conveyed with covenants of warranty, but the title failed, as in *Rice* v. *Goddard,* 14 Pick. 293.

In the present case the agreement was of the same date as the notes, and it will not be disputed that it shows the consideration of the notes secured by the mortgage. The consideration may probably be considered to be stated in the first sentence of the *agreement,* and what follows is merely explanatory of particulars. This sentence is—I have this day agreed to *deed* certain lands, &c. Webb so agreed to deed this land, in consideration that he had received two notes against one Abram Amey, in amount twenty-seven dollars, and *these two notes of Stone,* in amount seventy-three dollars. Now it appears that though *Webb* has received a part of the payment, viz., the notes of Amey, yet *Stone* has not received the deed or writing, which was the consideration for that payment and *these notes of Stone,* but on the contrary has been refused it at various times.

By the agreement, nothing further was necessary to be done on the part of Stone before Webb *should execute the writings ;* yet it appears by the case that Webb refused at various times any further writings, and this though Stone offered the money due on his notes, and had it by him. It also appears that at another time Webb refused to deed, when offered payment on his notes, until the Amey notes should be made good to him. Now it appears from the agreement that the Amey notes were received by Webb *without any guaranty* of this kind. On the contrary, in a *distinct sentence,* he says, I received of said Stone two notes for seventy-three dollars, *which,* when paid, will be in full for said land. The payment, then, of *these two notes* of seventy-three dollars, (those secured by this mortgage,) was the only remaining duty, on the part of Stone, ever to be performed, and his offer of this, upon various occasions, all that Webb could properly require in any view of the case. Evi-

dently Webb took the Amey notes upon his own risk, except the agreement that Stone should put him in possession of the security he held at the time they should make the writings. What that security was, does not appear. If it was a mortgage, the transfer of the notes sufficiently passed the security. At any rate he never had an opportunity to pass the security, as Webb constantly refused to make out the writings. Nor does it appear that at any time Stone was requested to deliver such security, or that Webb assigned _that_ as a reason for not executing the agreement. On the contrary, Webb said if Stone was not satisfied with the writings that he had got, he should not give him any more.

It cannot be contended that Stone's improving two acres of the land for a year or two renders the failure of consideration _partial_ and _not total._ It does not appear under what arrangement with Webb he thus occupied. At any rate the consideration of the notes was _a deed of the land,_ not a right to occupy. Occupying is receiving no part of the agreement. Nor even does a right to occupy accrue to Stone _by the agreement,_ and if he went on afterwards, he must have been a trespasser, or have done it under some other arrangement, and for other considerations than the agreement applies to.

_Haywood_ and _Fletcher,_ for the plaintiff.

BELL, J. There is nothing in our statute relative to personal mortgages which prescribes any different rule as to the description of the debt secured, from that required at common law. Substantial correctness, such as may prevent mistake or uncertainty as to the debt intended, is all that has ever been required. The ordinary rules applicable to the description of persons or property, apply to the description of the debt. If necessary, in order to understand what person or thing is meant, courts inquire into all the circumstances of the case, and, comparing the description given with all the matters to which it might apply, or might be supposed to apply, if they find no reasonable

doubt as to the person or thing intended, any errors of description in relation to details are disregarded; and where a part of the description, instead of being merely defective and imperfect, is actually incorrect and untrue, the court simply reject the incorrect parts, and are governed by the residue. These principles are familiar in their application to the names of persons in wills, and to the descriptions of property, both in deeds and wills. In all cases of description of the person, if it be made with sufficient certainty that the person intended may be distinguished from any other person, trifling omissions or misprisions will not render a devise invalid. Pow. Devises 337; 10 Co. 576; Plowd. Com. 345, a; *Foster* v. *Walker*, Cro. Eliz. 106; *Rivers Case*, 1 Atk. 110. The rule is, that if the description be sufficient to ascertain the land intended to be conveyed, the land will pass, though it does not agree with some of the particulars of the description; and if there be any thing introduced which is inconsistent with the rest of the description, it will be rejected. *Lyman* v. *Loomis*, 5 N. H. Rep. 408; *White* v. *Gay*, 9 N. H. Rep. 126; *Cartwright* v. *Amatt*, 2 B. & P. 43; *Cutter* v. *Tufts*, 3 Pick. 272; *Jackson* v. *Marsh*, 6 Cow. 281; *Wing* v. *Burgis*, 1 Shep. 111.

The same principles apply with equal force to the description of the debt, as of the property by which or the person to whom it is secured. When a note or other obligation is offered in evidence in connection with a mortgage, it is not necessary that all the particulars of it should be specified in the condition, in order to identify it as the note intended to be secured by the mortgage. It will be sufficient if it is so far described that it appears with reasonable certainty to be the note intended to be secured by the mortgage. *Robertson* v. *Stark*, 15 N. H. Rep. 109; *Colby* v. *Everett*, 10 N. H. Rep. 429; *North* v. *Crowell*, 11 N. H. Rep. 251. Upon these well settled rules we think the objection in relation to the variance of the notes from their description in the condition of the mortgage, cannot be supported.

The consideration of these notes was the agreement to convey

to the defendant certain real estate. It is contended that this consideration has failed, because the plaintiff has refused to perform his agreement. Now we take the law to be settled here, that whenever one party to a contract refuses to execute any substantial part of his agreement, he thereby gives to the other party the option to rescind the entire contract, by offering to restore what he has received and replacing the parties in their original situation, provided the offer to do this is made in a reasonable time, and the situation of the parties remains so far unchanged that they can be restored to their first position. *Luey* v. *Bundy*, 9 N. H. Rep. 298; *Kimball* v. *Grover*, 11 N. H. Rep. 375; *Snow* v. *Prescott*, 12 N. H. Rep. 535; *Bank* v. *Gregg*, 14 N. H. Rep. 331. The party who would take this ground must do so distinctly and unequivocally. He cannot treat the contract as binding and as rescinded at the same time. Here, till the trial, the agreement of the plaintiff has been treated as binding. The defendant occupied a part of the land one or two years. He has never offered to return the agreement, or demanded the return either of his or Amey's notes, or the cancelling of his mortgage. On the contrary, he called on the plaintiff for a deed in the fall of 1847, and at other times. He bargained the land to a third person, who, in the spring of 1848, applied for a deed. And in short, he has done no act indicating an intention to avoid the agreement. The entire contract which at the first formed the consideration of the notes, still remains in force; is as valid now as it ever was; and the consideration of the notes has not failed, either in whole or in part.

There does not seem to have been even a breach of the agreement to convey the land, if the facts are truly stated. By the agreement, when the writings were to be made Stone was to put Webb in possession of the security he held for the payment of Amey's notes. It does not appear what that security was, nor what was its value. But, whatever it was, Webb was entitled to have it when he executed the writings. The defendant shows that he had the money to pay his own notes, and

offered to pay them, but it is not shown that any offer was made to give up the security for the Amey notes. The plaintiff assigned as a reason for refusing to convey, that one of the Amey notes was not good. He had a right to insist that that note should be made good, so far as the security would go, and he had the right to refuse to make the writings until that security was placed in his possession.

*Judgment on the verdict.*